GEORGE C. JACKSON *v.* WALTER BELL, FIRE PREVENTION
COMMISSIONER.*

(*Knoxville.*   September Term, 1920.)

1. **APPEAL AND ERROR.   No review of evidence in absence of bill
of exceptions.**

Evidence cannot be reviewed in the absence of a bill of exceptions.
(*Post,, pp.* 454-456.)

2. **APPEAL AND ERROR.   Bill of exceptions not showing when
signed not part of record.**

A purported bill of exceptions signed by the trial judge, but not
filed below and failing to show when the trial judge signed it,
*held* insufficient as not part of the record.   (*Post, pp.* 454-456.)

Acts cited and construed: Acts 1915, ch. 131.

3. **STATUTES.   Act creating office of fire prevention commissioner held
not invalid as containing matter not within caption.**

Public Acts 1915, chapter 131, creating the office of fire prevention
commissioner deputy commissioner, and assistants, defining their
powers, fixing compensation, and providing ways and means to
enforce the act and penalties for violation thereof, *held* not in-
valid as containing matters not within the purview of the cap-
tion in violation of Constitution, article 2, section 17.   (*Post, p.*
456.)

Constitution cited and construed:   Art. 2, sec. 17.

4. **STATUTES.   Act creating office of fire prevention commissioner
held not invalid as class legislation.**

Public Acts 1915, chapter 131, creating the office of fire prevention
commissioner and providing for the enforcement of his orders,

*On validity of statute requiring the tearing down or removal of
a building, see note in 3 A. L. R., 1630.

Jackson v. Bell.

*held* not to violate Constitution, article 11, section 8, as class legislation, the act bearing alike on all citizens owning property especially liable to fire and which is suituated so as to endanger life or property. (*Post, pp.* 457-459.)

5. CONSTITUTIONAL LAW. Eminent domain. Act authorizing destruction of property liable to fire held within police power.

Public Acts 1915, chapter 131, creating the office of fire prevention commissioner and conferring upon his authority to have premises found to be especially liable to fire remved or remedied and repaired, torn down, demolished, materials removed, and all dangerous conditions remedied as the case may be, *held* not to violate Constitution, article 1, section 21, and article 11, section 8, as authorizing the taking of the owner's property without his consent and without compensation and not according to the law of the land; the destruction of property liable to fire being within the police power. (*Post, pp.* 459-461.)

Cases cited and approved: York v. Hargadine, 142 Minn., 219; Swett v. Sprague, 55 Me., 190; Runge v. Glerum, 37 N. D, 618; State v. Norvell 137 Tenn., 82.

Cases cited and distinguished: Railroad Co. v. Moriarity, 135 Tenn., 446; Theilan v. Porter, 82 Tenn., 622.

Constitution cited and construed: Sec. 21, art. 1; Sec. 8, art. 11.

6. HEALTH. Legislative intent in enacting statute creating fire prevention commissioner stated.

Public Acts 1915, chapter 131, creating the office of fire prevention commissioner and providing for procedure against fire hazards, *held* to be aimed solely at fire hazards, and should be administered with caution. (*Post, pp.* 461, 462.)

---

FROM BLOUNT.

---

By Certiorari and Supersedeas from the Supreme Court to the Circuit Court.—HON. S. C. BROWN, Judge.

THOS. N. BROWN, for appellant.


- GAMBLE, CRAWFORD & GODDARD, for appellees.


MR. JUSTICE GREEN delivered the opinion of the Court.


This case is presented by a petition for *certiorari* and *supersedeas* to the circuit court of Blount county, seeking to review the action of that court in affirming an order of the fire prevention commissioner requiring the petitioner here, George C. Jackson, to destroy as a fire hazard a certain building which he owned in the town of Maryville. The writs of *certiorari* and *supersedeas* have been heretofore granted and the case taken under advisement, after argument, by the court. A preliminary motion was made by the fire prevention commissioner to dismiss the petition for *certiorari* and *supersedeas*, because no brief was filed with the petition, for lack of notice, and for certain other irregularities. We do not discuss these grounds of the motion to dismiss, since the questions here presented are of importance, and we prefer to rest our decision of the case on broader grounds.

Our attention is called in this motion to the fact that the record before us contains no bill of exceptions. This is true, and we cannot overlook this defect and undertake to review the evidence. A purported bill of exceptions is

attached to the record filed here duly signed by the trial judge. It does not, however, appear that this bill of exceptions was ever filed in the court below. It does not appear when the trial judge signed the bill of exceptions. No order was made at the trial term granting any extension of time after adjournment for filing a bill of exceptions. It is obvious, therefore, that we cannot look to such a bill of exceptions as is presented here. It is no part of the record as it stands, and could not have been made a part of the record after the adjournment of court without some order to that effect (motion for new trial having been overruled) during the trial term.

A technical record, however, is before us which consists of Jackson's petition for *certiorari* filed in the circuit court to review the order of the fire prevention commissioner, the answer of the fire prevention commissioner, and a number of orders made in the case in the circuit court. The record here, therefore, is sufficient to enable Jackson to make the constitutional objection, which he urges to the statute upon which this proceeding was based.

Chapter 131 of the Acts of 1915 is entitled:

"An act to create the office of fire prevention commissioner, and provide for the appointment of a fire prevention commissioner, deputy fire prevention commissioner and assistants, to define their powers and duties and to fix their compensation; and to provide ways and means for the enforcement of this act, and penalties for a violation thereof."

The statute is quite lengthy, and only such portions thereof will be set out in this opinion as are drawn in question by the petitioner.

Generally speaking, the act provides for the appointment of the officials named in the caption and confers upon them certain duties and fixes their compensation. It further undertakes to provide ways and means for securing compensation for these officials, and otherwise provides ways and means to enforce and make effective the act, as well as providing penalties for a violation of its terms. All these matters are set out with detail and particularity, but the whole seems to be harmonious and to fall well within the title above quoted.

The first objection to the statute is that it contains matter not within the purview of the caption in violation of section 17 of article 2 of the Constitution. We have not discovered any such infirmity.

It is urged by the petitioner that section 18 of the statute which required fire insurance companies transacting business in this State to pay a tax of one-half of one per cent. on the net premium receipts on their Tennessee business for the maintenance of the department of the fire prevention commissioner is beyond the title of this act. We do not think so. The title indicates that the act will fix the compensation of the officials of this department and will provide ways and means for the enforcement of the act. This levy on the insurance companies is but the means of enforcing that provision of the act fixing the compensation of such officers.

We do not see any suggestion of class legislation in the statute in violation of section 8 of article 11 of our Constitution. The act appears to bear alike on all citizens owning property "especially liable to fire, and which is situated so as to endanger life or property." Section 7.

Section 7 of this statute contains the following:

"The fire prevention commissioner, his deputies or assistants, upon the complaint in writing of any citizen, or whenever he or they shall deem it necessary, shall inspect any or all buildings or premises within their jurisdiction. When any such officer shall find any building or other structure which for want of repairs, lack of sufficient fire escapes, automatic or other fire alarm apparatus or fire extinguishing equipment or by reason of age or dilapidated condition, or from any other cause, is especially liable to fire, and which is situated so as to endanger life or property, and whenever such officer shall find in any building combustible or explosive matter or inflammable conditions dangerous to the safety of such buildings, he or they shall order the same removed or remedied, and such order shall be immediately complied with by the owner or occupant of such premises or buildings; if such order is made by a deputy or assistant to the fire prevention commissioner, such owner or occupant may, within twenty-four hours, appeal to the fire prevention commissioner, who shall, within ten days, review such order and file his decision thereon, and unless by his authority, the order is revoked or modified, it shall remain in full force and be complied with within the time fixed in said order

or decision of the fire prevention commissioner, provided, however, that any such owner or occupant who feels himself aggrieved by any such order, or affirmed order may, within five days after the making or affirming of any such order by the fire prevention commissioner, file his petition for *certiorari* and *supersedeas* with the circuit court wherein such property is located, praying a review of such order, and it shall be the duty of such court to hear the same on the first convenient day, and to make such order in the premises as right and justice may require, and in case such owner or occupant is not satisfied with the order or judgment of the circuit court, he may file a petition for *certiorari* and *supersedeas* in the appellate court to review such order or judgment. Such parties as shall file a petition for *certiorari* and *supersedeas* in the circuit court to review such order, shall file, with said court, a bond in an amount to be fixed by said court, in no case to be less than two hundred and fifty dollars ($250), with at least two sufficient sureties, to be approved by the court, conditioned to pay all the costs on such petition for *certiorari* and *supersedeas,* in case such appellant fails to sustain the said petition, or same be dismissed for any cause, together with all damages that may be occasioned on account of the failure of such owner or occupant to comply with the order of the fire prevention commissioner, in case said order of the fire prevention commissioner is sustained or the petition dismissed for any cause."

Under further provisions of the same section, the fire prevention commissioner, in case of the failure of any

party to comply with his order or the order on appeal by the court, is authorized "to cause such building or premises to be repaired, torn down, demolished, materials removed and all dangerous conditions remedied, as the case may be, at the expense of such party or parties." A lien is then provided on the property to secure any expense to which the fire prevention commissioner is put in this connection.

The statute, therefore, confers on the fire prevention commissioner authority to have premises found to be "especially liable to fire" "removed or remedied" and "repaired, torn down, demolished, materials removed, and all dangerous conditions remedied, as the case may be."

It is insisted for the petitioner that the foregiong is in violation of section 21 of article 1, and section 8 of article 1, of the Constitution, and authorizes the taking of his property without his consent and without compensation and not according to the law of the land.

The destruction of the petitioner's property is clearly referable to the police power of the State. Petitioner argues the case as though his property was being taken under the power of eminent domain.

In *Railroad Co.* v. *Moriarity,* 135 Tenn., 446, 459, 186 S. W., 1053, 1056, we said: "The police power, although it may take property, does not appropriate it to another use as a general rule, but destroys the property. In eminent domain property is taken from the owner and transferred to a public agency to be enjoyed by the latter as its own."

The police power has been extended to great lengths by the courts of recent years, further in some cases than we think wise. The case before us, however, seems to fall clearly within the police power, and we have no hesitation in so declaring. Nothing is more dangerous than fire, and considerations of public welfare easily sustain drastic regulatory fire legislation.

Statutes quite similar to this have been sustained in *York* v. *Hargadine,* 142 Minn., 219, 171 N. W., 773, 3 A. L. R., 1627; *Swett* v. *Sprague,* 55 Me., 190; *Runge* v. *Glerum,* 37 N. D., 618, 164 N. W., 284. In *Theilan* v. *Porter,* 82 Tenn. (14 Lea), 622, 52 Am. Rep., 173, this court upheld an act of the legislature which empowered taxing districts to condemn and abate as nuisances all houses which should be found unhealthy. Speaking of the relation of section 21 of article 1 of the Constitution to such legislation, this court said:

"But this inhibition has no application as a limitation of the exercise of those police powers which are necessary to the safety and tranquility of every well-ordered community, nor of that general power over private property which is necessary for the orderly existence of all governments: Sedg. Const. Law, 434, 435; and in a note on pages 435, 436, it is said, 'In very many instances summary proceedings, without the usual forms of a regular judicial trial, have been held valid as falling within the police powers of the State, because the necessities of society and good government demand a certain amount of summary and repressive measures which would be ineffectual if de-

layed by ordinary machinery of more regular judicial trial; and numerous examples and cases are given in which such summary proceedings were held valid; and it is added, abating a nuisance does not take away property without due process of law, for the common law recognized the power to abate a nuisance in a summary manner." *Theilan* v. *Porter, supra.*

This reasoning controls the case here presented. A fire hazard is a nuisance and is none the less so because the act of 1915 failed to denominate it as such in terms, and the abatement of such a nuisance is not the taking of property without due process or a taking for which compensation must be made.

That the sections of the Constitution relied on by the petitioner do not apply to the taking of services or property when the State is proceeding under its police power is declared in many of our cases. See *State* v. *Norvell,* 137 Tenn., 82, and cases collected at page 94, 191 S. W., 536, L. R. A., 1917D, 586.

We think, therefore, that chapter 131 of the Acts of 1915 is not subject to the constitutional objections urged against it herein.

This case appears to have been tried by a jury in the circuit court. No point is made on this procedure by either party, and the court will therefore make none.

While the evidence is not before us, we have no misgivings as to the justice of the result reached below. The case seems to have been very fully developed in the trial court, and the order of the fire prevention commissioner direct-

ing the destruction of petitioner's building was approved by a jury and by an able and conscientious judge. Nevertheless, relative to the general administration of this statute we think it proper to observe that it was aimed solely at fire hazards and was not intended to promote the city beautiful idea. The statute should be administered with caution.

As said by the supreme court of Minnesota in the case cited above: "Where repairs or alterations can be made lawfully upon a wooden building so as to eliminate the special dangers arising from its location and condition to surrounding property and persons, such repairs or alterations should be ordered rather than a tearing down of the building." *York* v. *Hargadine, supra.*

For the reasons stated, the judgment of the trial court will be affirmed, with costs.